UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SELINA PENDLETON, | ) |
| *Plaintiff*, | ) Case No. 2:20-cv-257 |
| v. | ) Judge Travis R. McDonough |
| | ) Magistrate Judge Cynthia R. Wyrick |
| UNITED STATES OF AMERICA | ) |
| *Defendant*. | ) |

**MEMORANDUM OPINION**

Before the Court is the United States of America's motion to dismiss for lack of subject-matter jurisdiction (Doc. 10). For the following reasons, the motion will be **GRANTED**.

I.     **BACKGROUND**

A.     **Allegations of the Complaint**

This is a negligence action brought pursuant to the Federal Tort Claims Act ("FTCA"). (*See* Doc. 1, at 2.) Plaintiff Selina Pendleton alleges that, on September 22, 2018, at approximately 3:50 p.m., she was driving Richard Hensley across her property in Washington County, Tennessee, in her all-terrain vehicle ("ATV") for the purposes of participating in a required farm inspection by the United States Department of Agriculture ("USDA"). (*Id.* at 2–3.) Plaintiff parked and exited the ATV. (*Id.* at 3.) While Plaintiff was standing in front of the ATV, Hensley attempted to move the ATV and, in doing so, accelerated toward her, pinning her between the vehicle and a gate. (*Id.*) The ATV continued to accelerate forward, eventually forcing its way through the gate and over Plaintiff. (*Id.*) As a result, Plaintiff suffered significant injuries. (*Id.*)

### B. Procedural History

Plaintiff filed this action on December 14, 2020, seeking damages from the United States of America based on Hensley's negligence. (*See* Doc. 1.) Defendant United States of America ("the Government") subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See* Doc. 10.) The Government argues that it has not waived sovereign immunity under the FTCA for the negligent actions of Hensley because, at the time of the accident, he was not an employee of the USDA or any other government agency. (*See id.* at 1.) Instead, the Government contends he is an independent contractor, for whose negligent actions the Government is immune from suit. (*Id.*)

In connection with its motion to dismiss, the Government has submitted a declaration by Andrew L. Fiske. (Doc. 10-1.) Fiske is a Supervisory Contract Specialist with the Farm Production and Conservation Business Center Acquisitions Division of the USDA and supervises federal-contracting professionals in the Tennessee office of the USDA Farm Service Agency ("FSA"). (*Id.* at 1.) In his declaration, Fiske states, among other things, that Hensley was not an employee of the USDA on September 22, 2018. (*Id.*)

Upon reviewing the parties' materials, the Court set a telephonic scheduling conference and follow-up status conference in September 2021. (*See* Docs. 22, 23.) Based on the discussions during these conferences, the Court ordered limited jurisdictional discovery for the purposes of determining whether the Government can properly be sued for Hensley's actions. (*See* Doc. 24.) This discovery was completed on December 31, 2021 (*see id.*), and the parties have submitted supplemental briefing based on the evidence procured during discovery. (*See* Docs. 28, 29.)

C.  **Jurisdictional Evidence**

At the time of the inspection, Hensley's relationship with the FSA was governed by a Blanket Purchase Agreement for Chattel Security Inspections ("BPA"). (Doc. 10-1, at 8–11.) The BPA explained that the FSA was seeking vendors to "complet[e] chattel (livestock, machinery/equipment, crops, etc.) security inspections and provid[e] expert witness testimony, if required." (*Id.* at 8.) It further stated that "the information obtained will be used by FSA in making supervisory decisions, planning disposition of collateral, accounting for collateral, and other loan making and servicing requirements as need," as well as to "assist FSA borrowers in utilizing proper farm business and management practices" and "as a basis for determining whether FSA assistance is available." (*Id.*) Each vendor was responsible under the BPA "for completing visual on-site inspections of FSA chattel security and developing a narrative to document the findings." (*Id.* at 9.) The BPA did not specify how vendors were to go about conducting these inspections beyond requiring that certain documents be submitted to the FSA upon completion. (*See id.*; Doc. 29-1, at 94–95.) The chattel-security inspections entailed completing an FSA form with information, including a full description of the chattels, whether there has been any deterioration to them, how new chattels were obtained, and acreages of crops for crop-secured loans. (Doc. 10-1, at 9–10.) The accompanying narrative was required to be submitted using an FSA format. (*Id.* at 10.) After an inspection, vendors would deliver these documents to the office of an FSA "ordering official." (*Id.*)

The BPA states that it is not a contract but "a pre-arranged understanding as to how the Tennessee Farm Service Agency (FSA) will buy, if it buys." (*Id.* at 8 ("A [BPA] is a simplified method of filling anticipated repetitive needs for services by establishing a 'charge account' with qualified Vendors.").) The BPA further states that it "creates no contractual obligation on either

3

the Government or the Vendor" and that the FSA and the vendor have freedom to decline orders. (*Id.*) Work assignments under the BPA were dispensed according to delivery tickets. (*Id.*) These delivery tickets listed the vendor's name and BPA number, the delivery ticket number and date, the borrowers' names and addresses, and the total owed to the vendor upon completion of the tasks on the ticket. (*See id.* at 12.) The BPA also stated that, while performing under the agreement, vendors must "maintain the same high standards of honesty, integrity, impartiality, confidentiality of information, protection of Personally Identifiable Information (PII), and conduct as Government Employees are expected to maintain." (*Id.* at 24.)

In 2018, the FSA solicited Hensley to enter into a BPA. (*Id.* at 1.) Hensley accepted via a signed "Vendor Acceptance" form on June 22, 2018. (*Id.* at 5.) During his deposition, Hensley testified that he accepted the offer to enter a BPA as a way to generate additional income following his retirement from the University of Tennessee. (Doc. 29-1, at 2–3.) He further testified that he received delivery tickets with twelve assignments that he was to complete in thirty days and was paid by direct deposit for the inspections he completed. (*Id.* at 6.) Hensley independently scheduled the inspections within the thirty-day window. (*Id.* at 34.)

On September 5, 2018, he received a delivery ticket that listed Plaintiff as one of the borrowers whose chattel he was to inspect. (Doc. 10-1, at 28.) Hensley also received a copy of Plaintiff's security agreement listing the chattel at issue. (*Id.* at 29–35.) Hensley testified that he did not speak with anyone at the FSA between the receipt of the delivery ticket on September 5, 2018, and the completion of the inspection on September 22, 2018. (Doc. 29-1, at 32–33.) He testified that he did not review the BPA prior to each inspection or consult the BPA during his inspection of Plaintiff's property. (*Id.* at 33.) Hensley also testified that he never consulted any other FSA materials while completing inspections. (*Id.* at 34.) On October 3, 2018, Hensley

4

submitted a "Vendor Certification" stating that the work assignments in the September 5, 2018 delivery ticket had been completed in accordance with the BPA. (Doc. 10-1, at 37.)

II. **STANDARD OF REVIEW**

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (quoting *Gentek Bldg. Prods. v. Sherwin–Williams Claims*, 491 F.3d 320, 330 (6th Cir.2007)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* at 375–76 (quoting *Gentek*, 491 F.3d at 330). When confronted with a facial attack, a district court takes the factual allegations in the complaint as true but disregards "conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.2005)). If the well-pled allegations in the complaint establish federal claims, the district court has subject-matter jurisdiction. *Id.* (quoting *Gentek*, 491 F.3d at 330).

"A factual attack challenges the factual existence of subject matter jurisdiction," rather than the sufficiency of the pleadings. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The allegations of the complaint are not presumed true in connection with a factual attack, *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), and the district court "has broad discretion with request to what evidence to consider . . . , including evidence outside of the pleadings, and has the power to weigh the evidence," *Cartwright*, 751 F.3d at 759–60 (citing *Ritchie*, 15 F.3d at 598). The burden ultimately rests with the plaintiff to show that subject-matter jurisdiction exists. *Id.* at 760 (citations omitted).

### III. ANALYSIS

The federal government enjoys sovereign immunity and "may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) (quoting *Munaco v. United States*, 522 F.3d 651, 652–53 (6th Cir. 2008)); *see Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The United States cannot be sued at all without the consent of Congress."). "A waiver of sovereign immunity may not be implied and exists only when Congress has expressly waived immunity by statute." *Muniz-Muniz*, 741 F.3d at 671 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)).

The FTCA waives sovereign immunity for personal-injury damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). But the FTCA limits its definition of who qualifies as a government employee:

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
>
> "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation[.]

28 U.S.C. § 2671.

The Government asserts that it is immune from suit in this action because Hensley was not an "employee of the government" for the purposes of the FTCA. (*See* Doc. 10, at 1.) The parties agree that the question of whether Hensley is an employee or an independent contractor is

jurisdictional. (*See* Doc. 11, 5–6; Doc. 18, at 3; Doc. 28, at 3–4; Doc. 29, at 15–16.) The parties further agree that this issue is governed by the "control test" outlined in *Logue v. United States*, 412 U.S. 521 (1973). (*See* Doc. 11, at 5–6; Doc. 18, at 3; Doc. 28, at 4.) In *Logue*, the Supreme Court held that the "critical factor" in determining whether an individual is a government employee for the purposes of the FTCA "is the authority of the principal to control the detailed physical performance of the contractor." 412 U.S. at 527 (citations omitted). The Supreme Court later confirmed that the relevant question "is not whether the [individual] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807, 815 (1976).

In *Logue*, the Supreme Court held that county-jail employees were not government employees under the FTCA even though the contract for their services charged the county employees with "provid[ing] custody in accordance with the Bureau of Prisons' 'rules and regulations governing the care and custody of persons committed.'" 412 U.S. at 529. Although the applicable rules and regulations specified standards for the treatment of federal prisoners and the government had the right to inspect the conditions of custody, it was dispositive that the governing agreement gave the federal government "no authority to physically supervise the conduct of the jail's employees." *Id.* at 530.

Here, as in *Logue*, the FSA did not physically supervise Hensley's job performance. Although he was bound by federal standards of conduct and was expected to present materials in a manner consistent with the BPA, the FSA did not "control the detailed physical performance" of Hensley's work. *Id.* at 527. Hensley was offered tasks—that he was not required to accept under the BPA—and was free to schedule and complete those tasks as he pleased during the

7

Case 2:20-cv-00257-TRM-CRW    Document 30    Filed 03/31/22    Page 7 of 10    PageID #: 292

relevant time frame. Hensley did not consult FSA guidelines or rules before or during each inspection and was not accompanied by federal employees. His day-to-day operations were left to his own control rather than the FSA's. Plaintiff's arguments to the contrary are unavailing.

Plaintiff first argues that Hensley was acting as a government employee because he was only on her property for the purposes of conducting an FSA inspection. (Doc. 18, at 3.) In her view, the *Logue* factors relating to Hensley's "day-to-day operations, payment schedule or other factors are not relevant to the accident or the damages sustained by the Plaintiff." (*Id.*) Plaintiff, however, provides no support for her assertion that these factors are irrelevant (*see id.*), and, contrary to her statement, the Supreme Court has held that the level of supervision is central to the employee determination under the FTCA. *See Logue*, 412 U.S. at 527–30.

Plaintiff further argues that Hensley is an employee because "[t]he interaction between Mr. Hensley and Plaintiff was controlled by USDA FSA Handbooks, forms, and delivery tickets." (Doc. 28, at 4–5.) But, in *Logue*, the jail employees were subject to agency rules and regulations, yet this was not determinative of the FTCA question. *See id.* at 529–30. The central issue was the lack of physical supervision of the jail employees carrying out their tasks. *See id.* The Court sees no basis for finding that a factor that did not decide the FTCA question in *Logue* decides it in this case.

Plaintiff attempts to distinguish *Logue* and other similar cases on the grounds that the contractors in those cases "had taken over or [were] solely in control of the entire operation." (Doc. 28, at 6–7.) Plaintiff argues that this case, in which a federal agency is contracting directly with individuals to perform job functions that would otherwise be performed by agency employees, materially differs from cases in which the Government contracts with an organization or state agency to perform a wider variety of job functions. (*Id.*) It is unclear why

8

Case 2:20-cv-00257-TRM-CRW   Document 30   Filed 03/31/22   Page 8 of 10   PageID #: 293

this format would make the "control" element less important to the FTCA determination, but, in any event, courts have applied *Logue*'s control test to individuals who contracted directly with federal agencies. *See, e.g.*, *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990), *cert. denied*, 499 U.S. 905 (1991) (holding that physicians serving as medical examiners for the Federal Aviation Administration were not government employees under the control test); *Charlima, Inc. v. United States*, 873 F.2d 1078, 1081 (8th Cir. 1989) (holding that private individuals contracted by the Federal Aviation Administration to perform airworthiness inspections of aircraft were not government employees under the control test). In *Leone*, the plaintiffs argued that *Logue* and *Orleans* could be distinguished because they involved organizations rather than individuals. 910 F.2d at 49. The Second Circuit, however, was "unconvinced that this distinction alter[ed] the relevant analysis," finding no reason that the logic of these cases would not apply to individual professionals. *Id.* This Court, too, is unconvinced that there is any meaningful distinction between cases dealing with contracting organizations and contracting individuals.

Lastly, Plaintiff argues that, even if Hensley was not acting as a government employee, she can still bring a claim under the FTCA because Hensley was "acting on behalf of a federal agency in an official capacity." (Doc. 18, at 3.) Plaintiff further points to the fact that, before 2018, FSA employees had been performing the inspections that Hensley was later paid to perform. (Doc. 28, at 5–6.) But, in *Logue*, the Supreme Court rejected these same arguments:

> [W]e are not persuaded that employees of a contractor with the Government, whose physical performance is not subject to governmental supervision, are to be treated as 'acting on behalf of' a federal agency simply because they are performing tasks that would otherwise be performed by salaried employees of the Government. If this were to be the law, the exclusion of contractors from the definition of 'Federal agency' in § 2671 would be virtually meaningless, since it would be a rare situation indeed in which an independent contractor with the Government would be performing tasks that would not otherwise be performed by salaried Government employees.

412 U.S. at 531–32.

9

Plaintiff has not shown that Hensley was subject to the requisite level of government supervision in performing services under the BPA to be considered a government employee. The Court therefore concludes that Hensley was not a government employee for the purposes of the FTCA and that the Government is immune from suit.[1]

IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Government's motion to dismiss this action for lack of subject-matter jurisdiction (Doc. 10).

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[1] The parties spend significant portions of their supplemental briefs arguing as to the application of the additional factors listed in *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997). But *Rodriguez* is an out-of-circuit case, and the Sixth Circuit has not adopted the *Rodriguez* factors as the test in this Circuit. The critical consideration recognized by the Supreme Court and the Sixth Circuit is the level of governmental supervision over and employee, and by this test, Hensley is not a government employee. This is a sufficient basis on which to find that the Government is immune from suit for damages Hensley caused, and the Court will not address the parties' *Rodriguez* arguments.